IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| DOUGLAS HANDSHOE | ) | |
| | ) | |
| v. | ) | Civil Action No.1:13cv251-LG-JMR |
| | ) | |
| AARON F. BROUSSARD, DANIEL ABEL | ) | |
| CHARLES LEARY, VAUGHN PERRET | ) | |
| CHRIS YOUNT, TROUT POINT LODGE | ) | |
| LIMITED, NOVA SCOTIA ENTERPRISES, | ) | |
| LLC | ) | |

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS ABEL AND NOVA SCOTIA ENTERPRISES LLC MOTION TO DISMISS UNDER RULE 12(b)(6) AND LACK OF PERSONAL JURISDICTION

INTRODUCTION

1.

Plaintiff has been the victim of an ongoing civil conspiracy to deprive he and his media company of their rights guaranteed under Article 3, Section 13 of the Mississippi Constitution as well as the First Amendment to the United States Constitution via multiple, vexatious, meritless Strategic Lawsuit Against Public Participation and Copyright Actions filed in 2 states and 1 foreign country. This civil conspiracy was for the express purpose of covering up illegal activity related to the notoriously corrupt former President of the Parish of Jefferson, defendant Aaron Broussard, currently serving a 46 month prison in the Federal Penitentiary at Butner, North Carolina.

2.

This case was removed from the Circuit Court of Hancock County Mississippi by defendants Leary, Perret and Trout Point Lodge without the consent of every defendant, most notably Aaron Broussard, who is in default in these proceedings..

3.

Defendants motion and memoranda to dismiss this instant action for lack of personal jurisdiction and for failure to state a claim under Rule 12(b)(6) betrays a lack of reading comprehension and must fail for the following reasons:

1

## THE COURTS IN MISSISSIPPI HAVE PERSONAL JURISDICTION OVER THE DEFENDANTS BECAUSE THE TORTS WERE COMMITTED IN PART IN MISSISSIPPI.

4.

Defendants Abel and Nova Scotia Enterprises correctly identify the numerous physical locations where they committed and conspired to commit multiple torts on behalf of felonious defendant Broussard. However Defendants fail to recognize that substantial portions of the torts they perpetrated were in Mississippi, including the injuries leading damages they caused to Plaintiff and his Media Company via the multiple paranoid, baseless lawsuits and abuses of process filed on behalf of this criminal enterprise and defendant Abel, focusing instead on a curious straw man hypothesis regarding whether or not they were doing business in Mississippi.[1]

5.

Additionally defendants Nova Scotia Enterprises LLC attempts to paint itself as an entity solely owned by the late Roy D'Aquila but failed to address the following from the criminal matter in the Eastern District of Louisiana, United States of America v Aaron F. Broussard, case 2:11-cr-00299-HH-FHS, Document 146, Page 4 filed by federal prosecutors and as stipulated by defendant Broussard at his sentencing in February 2013:

---

[1] Trout Point Lodge has relentlessly marketed itself as a travel destination to the United States public, including in newspapers with a circulation in Mississippi such as the New Orleans Times Picayune, US Today as well as other media outlets such as the New York Times and National Geographic despite their fanciful denials of same in their sworn affidavit dated July 17, 2013. Plaintiff avers these denials are beside the point.

- *Broussard's receipt of a major ownership interest in a company holding Canadian resort property for little or no capital contribution, which was instead supplied by various Parish vendors*

Beginning in or around 2002, a company named Nova Scotia Enterprises, LLC ("NSE"), was formed. *See* Exhibit A at 1-5 (Articles of Organization and Initial Report of NSE). NSE was a holding company for several pieces of vacation rental property located in the Canadian province of Nova Scotia. *See* Ex. A at 11 (Operating Agreement of NSE at Section 2.3, noting purpose of company is to acquire and own real property). At various times from 2002 through 2010, there were up to twelve partners in NSE – many of which were Jefferson Parish contractors or prospective contractors. *See id.* at 32-34 (attachments to NSE Operating Agreement). Broussard was also a partner in NSE. *See id.* at 34. However, unlike almost every other partner in NSE, Broussard was given a large, *42% interest* in NSE for a small capital contribution to the company. *See id.* at 34 (reflecting Broussard's ownership interest) & 56 (NSE spreadsheet reflecting contributions made by NSE partners and noting that Broussard's contribution as approximately $782.60). By contrast, nearly $50,000 was contributed by several other NSE partners for the upkeep and maintenance of properties. *See id.* at 56. Significantly, many of the NSE investors who supplied the vast majority of the funds obtained a much *smaller* ownership interest than Broussard in NSE. *See id.* at 32-34 (reflecting 3% or 6% interest obtained by other partners in NSE). Most importantly and not coincidentally, during Broussard's tenure, many of the NSE partners, through their various

---

[1] If applicable, a representative sample of some of the documentary evidence the Government seeks to admit relating to these acts is attached here. Additionally, for each of the wrongful acts, the Government anticipates presenting testimonial evidence at trial.

4

This document continued:

corporations, received contracts with, and work in, Jefferson Parish, worth millions of dollars, at the same time they were funding NSE and Broussard's corporate interest in it. Finally, Broussard sought, at the conclusion of his tenure as Parish President, to sell his ownership share in NSE – which was purchased for very little – for nearly $200,000, an extraordinary return on the minimal investment supplied by Broussard. *See id.* at 57-60 (correspondence and promissory note regarding Broussard sale). Thus, in sum, the Government will present evidence reflecting that various Jefferson Parish vendors (who sought and received work when Broussard was Parish President) supplied investments (a thing of value) for a company owned, in large part, and managed by, Broussard. *See* Exhibit A at 1-60.

6.

Nova Scotia Enterprises, LLC was one of many criminal enterprises that defendant Broussard and his co-conspirators actively tried to hide and conceal via the use of Strategic Lawsuits Against Public Participation (SLAPP suits) filed by Broussard's business partners and agents in Canada, Daniel G. "Danny" Abel, Charles Leary, Vaughn Perret and Trout Point Lodge against Plaintiff and two other Metro New Orleans news organizations in the Times Picayune and Louisiana Media Company LLC investigating these illegal self-enrichment schemes.

7.

The Louisiana Media LLC SLAPP suit is instructive in how the co-conspirators combined to further their tortious schemes. In response to defendants' Trout Point Lodge Limited, Leary and Perret's continued harassment of Plaintiff and commenters to the Slabbed New Media website along with subsequent revelations they had obtained Canadian Court orders to identify and out commenters to the Slabbed New Media website, Plaintiff hired a researcher to examine case documents in the Louisiana Media suit filed by defendants Leary, Perret and Trout Point Lodge. Several of the documents obtained including court filings from defendants Leary, Perret and Trout Point Lodge that were used to establish their calculation of and claims for damages. I respectfully call for this Honorable Court's attention to paragraph 9 of an affidavit of defendant Charles Leary dated September 21, 2011 which is attached as Exhibit A:

> 8. On September 15, 2011, I provided Ms. Bennett-Clayton with a copy of my HSBC Bank mortgage documents, including the relevant email from my attorney's office.
> 9. On the same day I also provided copies of correspondence from Roy d'Aquila, who was the contact person for a group of investors that managed and controlled the building at 140 Trout Point Road, known as River Bend Lodge. They are attached hereto as Exhibit "6".

4

The above excerpt of the referenced correspondence from the late Roy D'Aquila, identified by defendant Nova Scotia Enterprises, LLC as the sole owner of the entity is attached as Exhibit B:

September 3, 2010

**VIA FACSIMILE ONLY (800) 930-0713**

Charles Leary
Trout Point Lodge Limited
P.O. Box 456
Kemptville, N. S., B0W1Y0

    Re: *Nova Scotia Enterprises, L.L.C.—River Bend Lodge*
     *Our File Number: 02:NOVA/02-190*

Dear Charles:

  Thank you for your fax of August 30, 2010.

  Please let me know whether you have made the second deposit. I am using the funds to pay Gateway Fuels for the past due bill.

  I have looked at the bill from Harry Rhyno Refrigeration Co. Please pay the bill and deduct from 2010 revenues as you indicated. Please do the same with the Orkin Pest Control bill.

  We literally have no money and the Members do not want to come up with any more capital contributions other than what we need to pay taxes and insurance. I would like however to know how much it would cost to replace the oil tank. If it is not a fire hazard, we simply need to leave at is for the time being.

  As I indicated to you in our phone conversation, we have listed the property with Sharon Fraser. The property is listed for what we believe to be a bargain price for $329,000.00. For the first 30 days of the Listing Agreement which I believe expires September 8, 2010, we can sell it to you without a commission. Therefore, please give sincere thought to whether you would like to buy the property for Trout Point within the next couple of days.

The date and content of this letter clearly indicates the NSE was liquidating its assets during the pendency of the Federal investigation and well after defendants Leary, Perret and Trout Point Lodge has filed SLAPP suits against both the New Orleans Times Picayune and Louisiana Media Company aka Fox 8 in order to silence the investigative journalism being done on this facet of the Broussard criminal investigation. Upon knowledge and belief it was defendants Abel, Leary and Perret that bought the assets at the heart of the illegal self-enrichment schemes and that defendant Broussard financially benefited from these transactions. Worth noting is that despite previous very public associations with Broussard's holdings at the Trout Point Resort in published travel media stories that promoted the Resort at Trout Point to the American public

that were published well before the criminal investigation began in late 2009, defendant Leary, in a voicemail left on the telephone of Times Picayune reporter Richard Rainey described Broussard as someone who simply lived down the road with no connections otherwise to Trout Point Lodge, such denial forming the heart of defendant Leary, Perret and Trout Point Lodge's SLAPP suit against the Times Picayune and the reporters involved in the story. Upon knowledge and belief defendant Abel financially benefitted from the subsequent financial settlement of the suit, which was filed and settled before passage of the SPEECH Act of 2010.

8.

Additionally, as these documents were posted to the Slabbed New Media website each publication that unraveled the bribery scheme and associated conspiracy and cover up and was met with additional acts of retaliation. Literally within weeks of time period in January, 2012 when Slabbed New Media began publishing these documents[2], Mr. D'Aquila died from a heart attack. Upon knowledge and belief the publication of these documents caused the breakup of the then D'Aquila's law firm as certain long time equity partners left the organization. Defendants Leary, Perret and Trout Point Lodge, in sworn testimony before a Canadian court proceeding held within days of D'Aquila's death, publicly blamed Plaintiff for D'Aquila's passing.[3]

9.

In May of 2012 Plaintiff was contacted by special agents of the Federal Bureau of Investigation regarding the Nova Scotia Enterprises and Kempt Wilderness Lodge LLC documents Plaintiff had obtained from defendant Leary, Perret and Trout Point Lodge's SLAPP suit against Louisiana Media Company wherein they were used to establish their damages in said suit. Plaintiff completely cooperated with said investigation.

10.

To the extent defendants Leary, Perret and Trout Point Lodge were using the financial results of these supposedly unrelated companies which United States Prosecutors revealed were for Broussard's financial benefit to establish *their* damages in SLAPP suits to which these other entities were not a named party cannot be gainsaid. The record is clear the defendants combined for both the financial benefit associated with filing SLAPP suits from Canada against Plaintiff and others as well as the related cover-up of illegal activity including the chilling effects associated with filing multiple SLAPP suits against Plaintiff including depriving Plaintiff of his due process rights in the Fox 8 SLAPP suit in furtherance of those ends.

---

[2] Specimen post on this topic can be found at http://www.slabbed.org/2012/01/25/aaron-broussard-never-has-any-management-involvement-with-trout-point-lodge-no-siree-you-say-any-different-and-well-sue-your-ass-in-nova-scotia/ and http://www.slabbed.org/2012/01/26/poor-roy-daquilla-got-butterflies-on-his-tummy-tum-tum-when-he-saw-val-bracys-reports-on-the-trout-point-development/
[3] Damages hearing held before Justice Suzanne Hood in the case Trout Point Lodge et al v Doug K. Handshoe held on January 30, 2012.

11.

*Smith v Temco, Inc.*, 252 So. 2d 212 (Miss 1971) is the first in a long line of cases which dealt with the "who shall commit a tort in whole or in part in this State against a resident of this State" requirement for the exercise of personal jurisdiction over out of state defendants. The court in that case cited *Dawkins v White Products Corp.* 443F.2d 589 in their opinion:

> (W)e are inclined to follow the clear language of the statute in the absence of any Mississippi decision that states that these additional bases added nothing to the statute. There is no such decision. We are convinced, Erie-bound as we are, to conclude that the Mississippi Supreme Court, given the facts and presented with the issue, would hold that the complaint as here amended alleged facts which, in spite of the affidavits of non-presence in the state, would permit service on the non-residents under the amended long-arm statute. For somewhat similar cases in other states see Eyerly Aircraft Co. v. Killian, 5 Cir. 414 F.2d 591, and Coulter v. Sears Roebuck and Co., 5 Cir. 426 F.2d 1315, and see Note Vol. XXXVIII Mississippi Law Journal p. 177.

The court in *Smith v Temco* continued:

> In 86 C.J.S. Torts s 21 (1954), it is stated:
>
> Damage resulting from a breach of a duty and invasion of a right is a necessary element of tort.
>
> In addition to the elements of tort heretofore discussed, a third element requisite thereto is damage resulting from the breach of duty and invasion of right.

It should be noted that legendary University of Mississippi law Professor Guthrie T. Abbott[4] included this case in his text for the law school course **MISSISSIPPI CIVIL PRACTICE AND PROCEDURE** (December 2009) as the court in Smith v Temco continued:

> The tort is not complete until the injury occurs, and if the injury occurs in this State, then, under the amended statute, the tort is committed, at least in part, in this State, and personam jurisdiction of the nonresident tort feasor is conferred upon the Mississippi court.
>
> Other courts have reached like conclusions under similar statutes. In a note appearing in Chapter 3 Judicial Jurisdiction in American Law Institute, Restatement of the Law (Second), Conflict of Laws 2d, at page 160 appears the following:

---

[4] Professor Abbott was so well respected that the Mississippi Legislature passed House Concurrent Resolution 135 in the 2001 session which recognized Professor Abbott's contribution to the Mississippi as an " outstanding educator". After reviewing his course material online Plaintiff agrees wholeheartedly.

> Many states have enacted statutes which authorize the exercise of judicial jurisdiction under the circumstances stated in the rule. The prototypical statute is that of Illinois (Ill.Civ.Prac.Act ch. 110 s 17 (1955)) which, although it speaks only of 'commission of a tortious act within this State', has been interpreted to confer jurisdiction on the Illinois courts in situations where a tortious act outside the State causes injury within the State. Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961). The Illinois statute is virtually identical to statutes in many other States. See. e.g., N.M.Sstat.Ann., ch. 21 s 21-3- 16(A) (3) (1967); Ore.Rev.Stat. s 14.305(1)(b) (s 14.035(1)(b)) (1963); Tenn.Code Ann. s 20-235(b) (1968). States which adopted the Illinois language subsequent to the decision on Gray v. American Radiator & Standard Sanitary Corp., supra, have generally followed the Illinois interpretation. See, e.g., Doggett v. Electronics Corp. of America, 93 Idaho 26, 454 P.2d 63 (1969).

In our view, one of the fundamental objects of the Legislature in adopting the 1964 amendment was to extend the personam jurisdiction of the courts of this State to the nonresident who may commit a tort in this State, either in whole or in part, to the injury of a resident of the State so as to provide a practical means for the enforcement of rights.

12.

*Jobe v ATR Marketing, Inc.*, 87 F.3d 751 defines the meaning of "injury" within the context of *Smith v Temco* as:

> Although the specific elements of a particular tort will vary, the conventional tort elements in a negligence action are duty, breach of duty, proximate causation and injury.² Palmer v. Anderson Infirmary Benevolent Ass'n., 656 So.2d 790, 794 (Miss.1995). A tort is complete when, and personal jurisdiction lies where, the actual injury occurs. Smith v. Temco, 252 So.2d at 216; see also Rittenhouse v. Mabry, 832 F.2d 1380, 1384 (5th Cir.1987). In determining where the injury occurred for jurisdictional purposes, actual injury must be distinguished from its resultant consequences, such as pain and suffering, economic effects or other collateral consequences that often stem from the actual injury.

13.

In this case it is abundantly clear the multiple injuries that result in damages occurred within Mississippi. For instance enrolling the Canadian Defamation Judgment in Hancock County Mississippi was clearly intended to inflict economic harm on the resident Plaintiff including but not limited to his credit worthiness and resultant access to credit to finance Plaintiff's various business endeavors. Plaintiff owns no property in Nova Scotia or Canada thus defendants could in no way ever expect to inflict harm upon Plaintiff with a Canadian Judgment in Canada, the enforcement of which in the United States would be practically impossible under a plain read of the United States SPEECH Act of 2010. Plaintiff had no connection to Canada or Nova Scotia as

the underlying news story Plaintiff was covering on his website was concerning corruption in Jefferson Parish Louisiana and its various connections to the Mississippi Gulf Coast as told by Canadian court filings defendants foolishly thought no one outside of Nova Scotia would obtain. The intent of enrolling said judgment was to inflict harm on Plaintiff at his domiciliary. The use of Canadian courts without jurisdiction in this matter furthered that scheme.

Additionally defendants conspired together to enter Mississippi and did enter the State of Mississippi to serve abusive process on Plaintiff at his personal residence in furtherance of the cover-up including enlistment of the Bay St Louis police to provide civil escort while defendant Yount harassed and berated Plaintiff's wife about Plaintiff's whereabouts. Yount also submitted several affidavits to Canadian proceedings as early as May 6, 2011 and Yount, along with codefendant Abel, would later attempt to taint Canadian proceedings with affidavits claiming expertise on the subject of Plaintiff's profound hearing loss.[5]

14.

Finally defendants Leary and Perret submitted perjured affidavits in their SLAPP suit filed against Louisiana Media Company LLC aka Fox 8 New Orleans with the clear intent of causing injury in the form of loss of privacy and other valuable constitutional rights to at least 4 Mississippi residents including Plaintiff on behalf of their co-conspirators. Their use of a Canadian court via a case that Plaintiff was not a litigant furthered their efforts at concealing these multiple, tortious acts. The injury, including the chilling effects on the constitutional rights guaranteed American citizens in both Mississippi and Louisiana under the first amendment to the Constitution involved with these multiple, concerted acts cannot be gainsaid.[6] These acts were clearly intended to inflict injury to Plaintiff and others in Mississippi and Louisiana, not Canada, where the scheme was initially perpetrated.

Additionally defendants actions went far beyond simply enrolling a judgment or suing for libel as they attempted to buttress their various cases filed against Plaintiff with tainted evidence obtained via the Canadian abuses of process and resulting court orders, which were served upon at least 2 US based American Internet Service Providers by defendants Leary and Perret, who were then terming co-defendant Abel as their US based "lawyer", such evidence included in affidavits sworn by defendant Leary in the case Trout Point Lodge LTD, Vaughn Perret and Charles Leary v Doug K. Handshoe, case number 12-CV-90, Document 21.

---

[5] Besides masquerading as licensed audiologists Yount also engages in the criminal practice as a Louisiana Private Detective without a license.

[6] Nor can the multiple mentions of American internet commenters to the Slabbed New Media website, by screen name, in numerous Canadian court filings as anything other than first amendment libel terrorism designed to chill discussion of the investigation into their co-conspirator Broussard's many criminal acts. These actions are tantamount to a full blown cover up of criminal activity via the abusive use of the Canadian court system by defendants Broussard, Yount, Nova Scotia Enterprises, Abel, Leary, Perret and Trout Point Lodge.

Similarly, defendant Abel, a nonparty to the above mentioned action submitted, after the case was decided in Plaintiff's favor, a perjured affidavit (Document 44-1) stating he was nothing more than Aaron Broussard's co-council on "four or five cases" a demonstrably false and misleading statement as Abel and Broussard's professional relationship included working out of the same "law office", a room at the Super 8 Motel at 2421 Clearview Parkway in Metairie, Louisiana.[7] They also filed appeals together and represented clients as "Attorneys at Law."[8] For example, an appellate brief cited the following address for the pair:[9]



15.

The acts of retaliation by defendants continued after Broussard's guilty plea including defendant Broussard telling multiple sources with known connections to Plaintiff that he was "cleaning out his office at the Super 8 Motel" and was leaking a political career's worth of accumulated "dirt" on his adversaries. Within days of those reports, including express mention of same in

---

[7] Carr v. Abel, 64 So.3d 292, 297 (La. App. 5th Cir. 2011), writ denied, 63 So.3d 1016 (La. 2011).

[8] Id. See also: Lowe's Home Construction, LLC v. Julius Lips, Jr., No. 10-CA-762 (La. App. 5 Cir. 2011)

[9] Id.

conversations held between Broussard and Plaintiff's lawyer Jack "Bobby" Truitt, Plaintiff was leaked what was purported to be text messages between Kenner Mayor Michael Yenni and a reputed former high school classmate turned gay pornographic actor named "Christian" that were the subject of an active FBI criminal investigation.[10] [11] Indeed Mayor Yenni, after being contacted by Plaintiff regarding these documents contacted the FBI per their instructions who in turn contacted Plaintiff to determine the source of the documents.[12] [13] Upon knowledge and belief the text messages that were leaked to Plaintiff were altered and specifically designed to defame Mayor Yenni.[14]

16.

In *Internet Doorway, Inc. v. Parks*, 138 F. Supp. 2d 773, Judge Barbour wrote:

> Internet Doorway next asserts that in personam jurisdiction exists under the "tort" prong of the Mississippi long-arm statute. "Under the tort prong of the Mississippi long-arm statute, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi." Allred v. Moore & Peterson, 117 F.3d 278, 282 (5th Cir.1997), cert. denied, 522 U.S. 1048, 118 S.Ct. 691, 139 L.Ed.2d 637 (1998). In addition, the Mississippi Supreme Court has stated that:
>
>> [t]he tort is not complete until the injury occurs, and if the injury occurs in this State, then, under the...statute, the tort is committed, at least in part, in this State, and personam jurisdiction of the nonresident tort feasor is conferred upon the Mississippi court.
>
> Smith v. Temco, 252 So.2d 212, 216 (Miss. 1971). Accordingly, Internet Doorway argues that there is personal jurisdiction under the tort prong of the long-arm statute as Mississippi is where the injuries allegedly suffered by Internet Doorway occurred.

---

[10] Times picayune reporters Drew Broach and Mary Sparacello covered this in a report that run under the headline, "FBI investigating downloads of Mike Yenni's text messages before Kenner mayoral election" which can be accessed online at http://www.nola.com/politics/index.ssf/2010/07/fbi_investigating_downloads_of.html

[11] Mayor Yenni vehemently denied the authenticity of those text messages, whose contents are best described as scandalous and disgusting.

[12] Again, Plaintiff cooperated fully with the FBI inquiry into this matter.

[13] Plaintiff was able to determine the source of the leak as one Mildred Congemi, wife of former Jefferson Parish Councilman Louis Congemi, a close associate of defendant Broussard.

[14] The contemporaneous Slabbed New Media website post on this subject can be found online at http://www.slabbed.org/2012/12/12/about-these-kenner-mayor-mike-yenni-text-messages-slabbed-keeps-bringing-up/

Davis counters that under Mississippi law, the consequences of a tort are distinguishable from the injury caused by a tort. Davis is correct in that the Fifth Circuit has stated that "consequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur." Allred, 117 F.3d at 282. The court reasoned that "Mississippi does not permit damages to serve as a proxy for injury in the personal jurisdiction calculus. The concepts are distinct and we must endeavor not to conflate the existence of an injury-and hence the completed tort-with the presence of its economic consequences." Id. at 283 (emphasis in original). Therefore, the question before this Court is whether the injury allegedly suffered by Internet Doorway occurred in Texas, from 777*777 where the e-mail was allegedly sent by Davis, or in Mississippi where it was received, opened, and read by a Mississippi resident or residents.

The United States District Court for the Northern District of Mississippi has addressed this general issue in Lofton v. Turbine Design, Inc., 100 F.Supp.2d 404 (N.D.Miss.2000). There, the plaintiff, a resident of Mississippi, sued the defendants, all residents of Florida, for, among other torts, libel and slander, alleging that statements placed by the defendants on a web-site in Florida and read by residents of Mississippi constituted defamation. The question before that court was whether, in the context of defamation, the "injury," as opposed to the "consequences" of the tort, occurred in Florida or in Mississippi. The court held that personal jurisdiction did exist under the "tort" prong of the Mississippi long-arm statute, stating:

> [t]he plaintiffs have effectively argued that the torts of libel and slander are not complete until publication, and upon publication in Mississippi, the tort is complete and would satisfy the requirements of the Mississippi long-arm statute. The plaintiffs allege, with evidentiary support, that the defendants committed the torts of defamation, libel and slander, at least in part, through their activities in Mississippi. These activities include publishing the alleged defamatory information complained of on the Internet via [the defendant's] website, allowing access and publication within the State of Mississippi and among Mississippi residents. This is sufficient to establish a prima facie case of personal jurisdiction under the `tort' prong of Mississippi's long-arm statute."

Id. at 409.

There are two important differences between the facts in Lofton and those sub judice. First, the medium of communication in Lofton was a web-site which is passive and must be accessed by the reader, whereas the medium in the instant case is an e-mail, which was actively sent to the recipient in hopes that the recipient would read its contents and patronize the web-site it was promoting. Second, the tort alleged in this cause of action is trespass to chattels as opposed to defamation. As for the first difference, the Court finds that the active as opposed to passive nature of e-mail weighs in favor of finding personal

jurisdiction. In regard to the difference in torts, the question becomes when does the "injury" occur when an e-mail is sent that allegedly constitutes trespass to chattels.

17.

Plaintiff has been sent numerous emails by or on behalf of the co-conspirators in this matter as early as January 2012 culminating in the Yenni text messages, which were leaked to certain third parties for the same purpose of causing injury to Plaintiff and his company Slabbed New Media, LLC.

18.

*Brown v Flowers Industries, Inc.*, 688 F.2d 328 (5th Circuit 1982) makes clear it only takes one instance of tortious conduct within Mississippi in order to confer in personam jurisdiction to the Mississippi courts. In this instant case, the number of occasions defendants combined in tortious activity for the purpose of inflicting injury and other tortious conduct within the State of Mississippi are too numerous to mention and remain within the page limits for briefs per the local rules of this Honorable Court. The court in *Brown v Flowers Industries, Inc.* concluded:

> When a defendant purposefully avails himself of the benefits and protection of the forum's laws-by engaging in activity ... outside the state that bears reasonably foreseeable consequences in the state-maintenance of the law suit does not offend traditional notions of fair play and substantial justice." Mississippi Interstate Express, Inc. v. Transpo, Inc., 681 F.2d 1003, 1007 (5th Cir. 1982) (citation omitted). In addition to the existence of foreseeable consequences, courts consider "the quantity of contacts, and the source and connection of the cause of action with those contacts" in determining whether a defendant's actions constitute "purposeful availment." Products Promotions, Inc. v. Cousteau, 495 F.2d 483, 494 n. 17 (5th Cir. 1974). Accord Standard Fittings Co. v. Sapang, S.A., 625 F.2d 630, 643 (1980), cert. denied, 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981).
>
> Two other factors are also relevant in determining whether the exercise of personal jurisdiction comports with due process. The first is "the interest of the state in providing a forum for the suit." Austin v. North American Forest Products, Inc., 656 F.2d 1076, 1090 (5th Cir. 1981); Products Promotions, supra, 495 F.2d at 498. Finally, the "relative conveniences and inconveniences to the parties" are also relevant. Austin, supra, 656 F.2d at 1090; Products Promotions, supra, 495 F.2d at 495.

Following the defendants' arguments contained in their memoranda on the jurisdiction of the Mississippi courts in this matter to their logical conclusion would have Plaintiff instituting litigation in multiple states and foreign countries for what is essentially one conspiracy that consists of multiple torts in furtherance thereof, designed to injure Plaintiff and his media company in his domiciliary in the State of Mississippi. In this case the majority of the defendants

are residents of Louisiana and beyond the court record of the multiple SLAPP suits filed in Canada and Louisiana[15], the witnesses are all located within the States of Mississippi and Louisiana.

Finally the court in Brown v Flowers noted that factual conflicts between the parties in determining jurisdiction:

> "must be resolved in plaintiff(s') favor for purposes of determining whether a prima facie case for in personam jurisdiction has been established." United States Ry. Equip. Co. v. Port Huron & Detroit R.R., 495 F.2d 1127, 1128 (7th Cir. 1974).

These and a multitude of other instances where the defendants combined through the various Abuses of Process and Malicious Prosecution schemes designed to "sue" Plaintiff "into bankruptcy" for exposing defendants roles in what the US Attorney would later term intrinsic evidence of other crimes are both legion and independently verifiable.[16]

## DEFENDANTS CONTENTION PLAINTIFF FAILS TO STATE A CLAIM UNDER RULE 12(B)(6) IS FARCICAL AND UNSUPPORTED

### 19.

Under Rule 12(b)(6), a court is required to[17]:

> (A)ccept all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citation omitted). In the instant case, Roebuck was proceeding pro se when he filed his complaint. Although pro se complaints are held to less stringent standards than those crafted by attorneys, "conclusory allegations or legal conclusions masquerading as

---

[15] During the pendency of this litigation defendant Abel has filed another defamation suit against Plaintiff, this time in the New Orleans Civil District Court including as co-defendants every one of Plaintiff's Louisiana based lawyers, 4 in total, as defamation co-defendants in order to deprive Plaintiff of his legal counsel in that matter.

[16] Indeed at a settlement conference held in November, 2012 before the Magistrate Roper, defendants Leary and Perret clearly threatened Plaintiff with additional lawsuits if plaintiff "did not stop writing about them". They made good on their threats less than two weeks after said conference, during the pendency of their p[previous SPEECH Act case. Worth noting is writing defamatory things was not alleged by defendants via their council, just the act of covering defendant's roles in the cover up of Broussard's illegal activity and their multiple SLAPP suits in furtherance thereof, was sufficient to garner the threat of additional, meritless litigation.

[17] *Roebuck v Dothan Security et al*, Unpublished Opinion of the United States 5th Circuit Court of Appeals [Case No.12-60649]

factual conclusions will not suffice to prevent a motion to dismiss." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002) (citation and internal quotation marks omitted).

20.

A plain read of the Plaintiff's complaint reveals it contains a sufficient amount of verifiable facts to sustain both the torts alleged and the monetary damages caused by those torts. It is undeniable that defendants Leary and Perret, in conspiracy with their co-defendants submitted perjured affidavits to the Canadian Court and actively concealed that tortious conduct for well over a year including combining for the financial benefits afforded by the act of cover up and the SLAPP suits that were inherent to that scheme. It is also undeniable that the SLAPP suit filed by defendant Abel against Plaintiff in Louisiana to harass and punish Plaintiff for exposing their roles in what United States Prosecutors would term "intrinsic evidence of other crimes" and his multitude of connections to defendant Broussard terminated in Plaintiff's favor as did the litigation instituted by defendants Leary and Perret attempting to enforce their Canadian defamation judgment. Also undeniable per the Canadian court record is that Leary and Perret filed a second defamation suit for the purposes of causing one of Plaintiff's webhosts to terminate an existing business relationship with Plaintiff causing economic injury to Plaintiff and that defendants Leary and Perret then dropped Plaintiff from this lawsuit once that purpose was achieved. Plaintiff's compliant for damages is not only factually based but also connects those facts with the elements for the torts alleged.

Finally a plain read of Plaintiff's complaint makes clear the civil conspiracy torts stem from defendants combining to commit the torts alleged therein. It is also clear that Nova Scotia Enterprises and Aaron Francis Broussard along with defendants Leary, Perret, Abel and Yount are a difference without distinction as the entity existed to their financial benefit as part of an ill-conceived, unsophisticated bribery scheme.

## CONCLUSION

The Mississippi courts clearly have personal jurisdiction over every defendant as they committed substantial portions of their tortious acts within Mississippi as defined in Mississippi's long arm statute and related jurisprudence. Additionally, Plaintiff has clearly elucidated several claims under which relief may be granted. For these reasons defendants motion to dismiss for lack of personal jurisdiction and for failure to state a claim under FRCP Rule 12(b)(6) should be denied.

Respectfully submitted

_____
Plaintiff, Propria Persona
Douglas Handshoe
214 Corinth Drive
Bay St Louis, MS 39520
(228) 284-0004
earning04@gmail.com

## CERTIFICATE OF SERVICE

I, Douglas Handshoe, certify I have sent a true and correct copy of the foregoing motion and affidavit to the following via United States Mail:

| | | |
|---|---|---|
| Craig J. Geraci, Jr | Aaron F. Broussard #32234-034 | Chris Yount |
| Kahn Swick & Foti, LLC | Butner Low FCI | 160 Metairie Lawn Dr |
| 206 Covington Street | Post Office Box 999 | Metairie, LA 70001 |
| Madisonville, Louisiana 70447 | Butner, NC 27509 | |
| For Nova Scotia Enterprises, LLC | | |

Daniel G. Abel
C/O The Super 8 Motel / Desai Enterprises
2421 Clearview Parkway, Room 106
Metairie, LA 70001

Henry Laird, Jones Walker
2510 14tth Street, Suite 1125
Gulfport, MS 39501
Attorney for Trout Point Lodge Limited,
Charles Leary and Vaughn Perret

I, Douglas Handshoe, certify I have sent a true and correct copy of the foregoing motion and affidavit to the following via Electronic Mail:

Craig J. Geraci, Jr.
Kahn Swick & Foti, LLC
206 Covington Street
Madisonville, Louisiana 70447
Attorney for Nova Scotia Enterprises, LLC
Craig.Geraci@ksfcounsel.com

_____
Plaintiff, Propria Persona
Douglas Handshoe
214 Corinth Drive
Bay St Louis, MS 39520
(228) 284-0004
earning04@gmail.com